UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSE DOLORES RIVAS VELASQUEZ,

Petitioner,

v.

WARDEN, et al.,

Respondents.

No. 1:25-cv-1818 CSK P

ORDER

Petitioner, a citizen and national of El Salvador who entered the United States on April 1, 1999, filed pro se a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  (ECF No. 1; ECF No. 9 at 17.)  On April 23, 2001, petitioner applied for Temporary Protected Status ("TPS"), which was approved on August 15, 2001.  On July 30, 2024, petitioner's TPS was denied.  (ECF No. 1 at 5; ECF No. 14 at 18.)  On August 1, 2025, petitioner reported to the U.S. Immigration and Customs Enforcement ("ICE") office in Fresno for a scheduled visit and was taken into custody by ICE officers.  He has been detained since August 1, 2025.  This habeas action concerns petitioner's detention.  For the following reasons, the petition is granted, and respondents are ordered to provide petitioner a bond hearing within seven days.

///

[1] The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1).  (ECF No. 10.)

1

## I.    FACTUAL BACKGROUND

Petitioner is a citizen and national of El Salvador who entered the United States on April 1, 1999, at the Brownsville, Texas port of entry.  (ECF No. 9 at 16.)  On April 23, 2001, petitioner applied for TPS, which was approved on August 15, 2001.[2]  (ECF No. 1 at 5; ECF No. 9 at 7 ¶ 6 (Decl. Deportation Officer Douglas Plummer); ECF No. 14 at 27-31.)  Petitioner's TPS was renewed several times.  (See, e.g., ECF No. 14 at 27 (TPS approval for 3/10/2018 to 9/9/2019).)  Petitioner was also regularly authorized employment.  (ECF No. 14 at 25, 33.)

On December 26, 2012, petitioner re-entered the United States from El Salvador at the San Francisco International Airport and was admitted with advanced parole as a TPS beneficiary. (ECF No. 9 at 7 ¶ 8.)

On June 24, 2024, ICE provided petitioner with written notice of its intent to deny petitioner's TPS application based on petitioner's criminal history.  (ECF No. 14 at 21-23.)  The notice required petitioner to "[s]ubmit certified judgments and conviction documents from the courts for all of [his] arrests, including, but not limited to, the charges listed" in the notice.  (ECF No. 14 at 21.)  The notice warned petitioner that the failure to submit the required evidence "will result in the denial/withdrawal" of TPS.  (Id. at 22.)  The notice further warned petitioner that if he did not respond to the notice by July 29, 2024, "it will be deemed an abandonment of [his] re-registration application and result in the denial of [his] application and withdrawal of [his] TPS." (Id.)

On July 30, 2024, petitioner's TPS renewal was denied due to abandonment, and he was notified in writing of this denial.  (ECF No. 14 at 18-19; see ECF No. 1 at 5.)  The written decision informed petitioner that while there was no appeal of this decision, petitioner could file a

---

[2]  As part of the Immigration Act of 1990, Congress created the TPS program. The TPS program provides humanitarian relief to foreign nationals from specified countries.  8 U.S.C. § 1254a; Sanchez v. Mayorkas, 593 U.S. 409, 412 (2021).  The Secretary of the Department of Homeland Security ("DHS") may designate a foreign country for TPS when individuals from that country cannot safely return due to armed conflict, natural disaster, or other extraordinary and temporary circumstances.  See 8 U.S.C. § 1254a(b).  While a non-citizen has TPS, they cannot be removed from the United States and can engage in employment.  8 U.S.C. § 1254a(a)(1).  El Salvador was designated for TPS in March 2001.

motion to reopen within 33 days of the date of the decision.  (ECF No. 14 at 18.)  There is no indication in the record before the court, including in the petition, that petitioner moved to reopen the TPS denial.

On August 1, 2025, petitioner reported to the Fresno ICE office for a scheduled visit to the Intensive Supervision Appearance Program ("ISAP").  (ECF No. 9 at 16.)  At his scheduled visit, petitioner was taken into custody by ICE and has been detained by DHS since August 1, 2025.  (ECF No. 1 at 5, ECF No. 9 at 8 ¶ 15.)  On August 1, 2025, petitioner was issued a Notice to Appear stating petitioner was in standard removal proceedings under INA § 240 (8 U.S.C. § 1229a),[3] which is distinct and different from expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1) (INA § 235(b)(1)).  (ECF No. 9 at 10.)  The Notice stated that petitioner was an alien present in the United States who has not been admitted or paroled and subject to removal pursuant to INA § 212(a)(6)(A)(i) (8 U.S.C. § 1182(a)(6)(A)(i)).  (Id.)

Since his detention, petitioner appeared for hearings in immigration court on August 14, 2025, September 30, 2025, and November 11, 2025, and requested the hearings be reset to a later date.  (ECF No. 9 at 8 ¶ 16; ¶ 17; ¶ 18.)  In their supplemental brief, respondents advised that petitioner's January 21, 2026 hearing had been continued and advanced to February 24, 2026 before an immigration judge.  (ECF No. 14 at 2, 7.)

Petitioner states in his unverified petition that he is applying for asylum and withholding of removal.  (ECF No. 1 at 5.)  Respondents appear to dispute this where the Deportation Officer declares petitioner "has not filed any application for relief with the immigration court."[4]  (ECF No. 9 at 8 ¶ 20.)

**II.    PROCEDURAL BACKGROUND**

On December 11, 2025, petitioner filed his pro se petition for writ of habeas corpus.  (ECF No. 1.)  Petitioner paid the court's filing fee.  On December 15, 2025, this Court issued a briefing

---

[3]  Removal proceedings pursuant to INA § 240 (8 U.S.C. § 1229a) are standard removal proceedings, which are distinct and different from expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1) (INA § 235(b)(1)).

[4]  The Court need not resolve this dispute because whether petitioner has applied for asylum does not impact the analysis of this petition.

order.  (ECF No. 3.)  On January 5, 2026, respondents filed their timely response to the petition. (ECF No. 9.)

On January 9, 2026, this action was reassigned to this Court after the parties consented to the jurisdiction of the magistrate judge.  (ECF No. 10.)

On January 12, 2026, petitioner filed a motion to proceed in forma pauperis, and a motion for appointment of counsel.  (ECF Nos. 11, 12.)

Petitioner's reply/traverse was due on or before January 19, 2026, fourteen days after the January 5, 2026 response.  (ECF No. 3.)  No reply or traverse has been filed by petitioner.

On January 27, 2026, the Court ordered respondents to file pertinent documents from petitioner's immigration file. (ECF No. 13.)  On February 4, 2026, respondents filed a supplemental brief and provided relevant documents.  (ECF No. 14.)

On February 13, 2026, the Office of the Federal Defender filed an amicus declaration in support of petitioner's motion for appointment of counsel.  (ECF No. 15.)

Briefing is now complete.

## III.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## IV.    DISCUSSION

Generally, noncitizens are subject to civil immigration detention only if the noncitizen

presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690 (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention).  The petition, filed on a form petition, raises only one claim for relief.  (ECF No. 1 at 16.)  Petitioner contends that his detention violates the Due Process Clause of the Fifth Amendment.  (Id. at 16.)

Respondents do not argue that petitioner is a flight risk or a danger to the community.  (ECF No. 9.)  Instead, respondents argue that petitioner is detained as an applicant for admission under 8 U.S.C. § 122(b)(2)(A) and is not entitled to a bond hearing because he is subject to mandatory detention.  (ECF No. 9 at 3-4.)  Respondents further argue that because petitioner is subject to mandatory detention he has no procedural due process right to a bond hearing.  (Id.)

### A. Applicability of 8 U.S.C. § 1225(b)(2)(A)

The Court must first decide whether petitioner is detained as an applicant for admission under 8 U.S.C. § 122(b)(2)(A) as respondents argue.  Section 1225(b)(2)(A) mandates detention during removal proceedings for applicants "seeking admission" and does not provide for a bond hearing.  Petitioner first entered the country on or around April 1, 1999, and was granted TPS status on August 15, 2001.  On December 26, 2012, petitioner re-entered the United States and was admitted with advanced parole as a TPS beneficiary.  Petitioner's TPS was renewed several times.  Even after his TPS was denied on July 30, 2024, petitioner remained out of immigration custody.  Petitioner was permitted to remain in the country out of immigration custody from approximately December 2012 until August 1, 2025, when he was detained upon checking in for a scheduled ICE visit.  Therefore, 8 U.S.C. § 1225(b)(2)(A) does not apply.

Section 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal."  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022).  Section 1226(a) provides several layers of review for an initial custody determination, and it confers "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change."  Id. at 1202.

The Court agrees with and joins the majority of courts nationwide, including the Eastern

/ / /

District of California, in rejecting respondent's new interpretation[5] of Sections 1225 and 1226. See Rodriguez Vazquez v. Bostock, 2025 WL 2782499, at *1, 21-22 (W.D. Wash. Sept. 30, 2025) (concluding, after a thorough analysis, that "the government's [interpretation of § 1225] belies the statutory text of the [Immigration and Nationality Act], canons of statutory interpretation, legislative history, and longstanding agency practice"); J.Y.L.C. v. Bostock, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (collecting more than thirty cases rejecting the government's assertion that § 1225 empowers DHS to arrest and hold a noncitizen present without legal status who has spent years in the U.S.); Cardona-Lozano v Noem, 2025 WL 3218244, at *6 (W.D. Tex. Nov. 14, 2025) ("Repeatedly, [district courts across the country] have found that DHS and the [Board of Immigration Appeals']  construction of the [Immigration and Nationality Act] is incorrect and that petitioners who have long resided in the United States but are being held under § 1225 are entitled to relief.") (collecting cases)); Faizyan v. Casey, 2025 WL 3208844, at *5 (S.D. Cal. Nov. 17, 2025) (holding that § 1226 applies to a petitioner who "DHS has consistently treated" as subject to discretionary detention and "who has been residing in the United States for two years" (internal quotation marks and citation omitted)); Josue I.C.A. v. Lyons, 2025 WL 3496432, at 3 n.6 (E.D. Cal. Dec. 5, 2025) (collecting cases); Morales-Flores v. Lyons, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases) ("Courts nationwide, including this one, have overwhelmingly rejected respondents' arguments and found DHS's new policy unlawful.").

"These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [petitioner], living in the interior of the country." Salcedo Aceros v. Kaiser, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases).  By contrast, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would

---

[5]  Until DHS changed its policy in July 2025, the Government consistently applied Section 1226(a), not Section 1225(b)(2), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal.  See Rodriguez Diaz v. Garland, 53 F.4th at 1196.

render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." Guerro Lepe v. Andrews, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases). This Court incorporates and adopts the thorough and persuasive reasoning of the district court in Lepe, 2025 WL 2716910, at *3-9.

Further, the Court acknowledges the recent decision in Buenrostro-Mendez, 2026 WL 323330, where the Fifth Circuit agreed with respondents' interpretation of § 1225(b)(2). This Court agrees with the district court in Gurvinder Singh v. Chestnut, 2026 WL 413839, at *1 n.1 (E.D. Cal. Feb. 14, 2026):

> Two courts of appeal have addressed whether 8 U.S.C. § 1225(b)(2)(A) applies to noncitizens who have lived in the United States for years without having been admitted. See Castañon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1060-62 (7th Cir. 2025) (concluding that government was not likely to prevail on the merits that petitioner was subject to mandatory detention under § 1225(b)(2)(A)); Buenrostro-Mendez v. Bondi, --- F.4th ---, Nos. 25-20496, 25-40701, 2026 WL 323330 (5th Cir. Feb. 6, 2026) (finding petitioners were subject to mandatory detention under § 1225(b)(2)(A)). Respondents cite to the Buenrostro-Mendez decision. Doc. 9 at 1. The Court finds the analysis in Castañon-Nava and in the dissent in Buenrostro-Mendez to be more persuasive on the statutory interpretation issue. In any event, the Buenrostro-Mendez decision did not address the due process claim at issue in the present case.

Gurvinder Singh, 2026 WL 413839, at *1 n.1. This Court does not find Buenrostro-Mendez to be persuasive for the reasons provided above. See also Singh v. Baltazar, 2026 WL 352870, at *3-6 (D. Colo. Feb. 9, 2026) (rejecting the Buenrostro majority in its interpretation of § 1225 as nonbinding and highlighting the Seventh Circuit Court of Appeals' disagreement with the Buenrostro majority) (citing Castanon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1052 (7th Cir. 2025)); Tomas Nicolas v. Warden, 2026 WL 364399, at *3 n.3 (S.D. Ind. Feb. 10, 2026) (disagreeing with Buenrostro majority and declining to follow); Chachipanta Cando v. Bondi, 2026 WL 357551, at *5 n.6 (D. Neb. Feb. 9, 2026) (same); Aroca v. Mason, 2026 WL 357872, at *15 n.40 (S.D.W. Va. Feb. 9, 2026) (same). In addition, as in Gurvinder Singh, petitioner raises a due process claim, which the court in Buenrostro-Mendez did not address, and which the Court turns to next.

Following the majority of courts, this Court also rejects the government's new

7

interpretation of 8 U.S.C. § 1225(b)(2)(A) and their contention that petitioner is an "applicant for admission" subject to § 1225(b)(2). This Court finds that petitioner is detained under 8 U.S.C. § 1226(a) and its implementing regulations because petitioner has been in this country for almost 13 years since his last admission in December 2012 and petitioner's August 1, 2025 arrest and detention by ICE were not upon his arrival to the United States. "Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention." Jennings, 583 U.S. at 306 (citing 8 CFR §§ 236.1(d)(1)). If, at this hearing, the detainee demonstrates that he or she is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the immigration judge will order his or her release. Rodriguez Diaz v. Garland, 53 F.4th at 1197 (citing Matter of Guerra, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)).

### B.    Due Process Claim

Petitioner argues that his detention violates his right to due process under the Fifth Amendment. Respondents argue that petitioner does not have a due process right to a bond hearing because § 1225(b)(2) does not provide for a bond hearing. Respondents' asserted compliance with § 1225(b)(2) does not demonstrate the government has satisfied the requirements of the Due Process Clause, "which of course constitute[s] the supreme law of the land[.]" Tot v. United States, 319 U.S. 463, 472 (1943) (Black, J., concurring).

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary." Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Supreme Court has found that a protected liberty interest may arise from a conditional

8

release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (finding due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in her "continued liberty." Id. at 481-84.

Here, petitioner was permitted to live in the United States after his December 2012 re-entry into the United States. He remained free of ICE custody, including after his TPS was denied on July 30, 2024. Such time allowed petitioner to form "enduring attachments of normal life." Morrissey, 408 U.S. at 482. This Court finds that petitioner's time out of custody, even after his TPS was denied a year before he was detained by ICE, gave rise to a constitutionally protected liberty interest.

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution. The Ninth Circuit has

"regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings." Rodriguez Diaz v. Garland, 53 F. 4th at 1206; see also Hernandez v. Sessions, 872 F.3d 976, 993 (2017) (applying Mathews factors in immigration detention context). In applying the Mathews test to a procedural due process claim to a detention under 8 U.S.C. § 1226, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz v. Garland, 53 F. 4th at 1206-07 (citations omitted). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. Mathews, 424 U.S. at 335.

First, petitioner has a private interest in remaining free from detention. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.")); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.").

The second Mathews factor also weighs in petitioner's favor. "[T]he risk of erroneous deprivation [of liberty] is high when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025); Salcedo Aceros, 2025 WL 2637503, at *12 (finding that the noncitizen's risk of erroneous deprivation was high because a bond hearing would likely reveal that the noncitizen still presented no public safety or flight risk). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Here, petitioner has been detained since August 1, 2025, without being given an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community. See, e.g., Rodriguez Diaz v. Kaiser, 2025 WL 3011852, at *11 (N.D. Cal. Sept. 16, 2025) ("If respondents wish to establish that re-detention is warranted by raising the effect of . . . [petitioner's] six alleged bond violations, a

10

hearing before a neutral adjudicator provides a forum to do so."); see also Cajina v. Wofford, 2025 WL 3251083, at *1, 6 (E.D. Cal. Nov. 21, 2025) (ordering petitioner's immediate release and enjoining and restraining respondents from re-detaining petitioner absent a pre-detention hearing, despite petitioner being charged with driving under the influence).

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws and in public safety, but respondents' interest in continuing to detain petitioner without a hearing is low. Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025). Detention hearings in immigration courts are routine, and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094. In addition, respondents indicate that petitioner is already scheduled for an immigration court hearing on February 24, 2026. (ECF No. 14 at 2.)

Overall, balancing these factors, this Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing. "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added). In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked. Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases). Respondents point to no reason a bond hearing could not be held, and provide no evidence of "urgent concerns," thus, a bond hearing is required. See Guillermo M. R., 791 F. Supp. 3d at 1036. Accordingly, the Court finds that petitioner is entitled to relief on his due process claim.[6]

---

[6]  This Court recognizes that the government has submitted information indicating that petitioner has a criminal history, including a February 2021 conviction for battery to spouse/ex-spouse and a March 2024 conviction for first degree residential burglary. (ECF No. 9 at 7-8 ¶¶ 7, 9-13.) Respondents do not contend, however, that petitioner is subject to removal based on his criminal convictions or that he was detained due to his criminal history under 8 U.S.C. § 1226(c). (See ECF Nos. 9, 14.) In addition, immigration officials did not detain petitioner when his TPS

## V.    OTHER MOTIONS

On January 12, 2026, petitioner filed a motion to proceed in forma pauperis.  (ECF No. 11.)  However, on December 11, 2025, petitioner paid the court's filing fee.  Therefore, petitioner's motion to proceed in forma pauperis is denied as moot.

On January 12, 2026, petitioner also filed a motion for appointment of counsel.  (ECF No. 12.)  On February 13, 2026, the Office of the Federal Defender filed a document titled, "Amicus Declaration of Federal Defender When Considering Appointing an Attorney for Petitioner." (ECF No. 15.)  Because the Court is granting the petition, the motion for appointment of counsel (ECF No. 12) is denied as moot.

Finally, each party proceeding without counsel shall keep the court informed of the current address at all times while the action is pending.  Any change of address must be reported promptly to the court in a separate document captioned for this case and entitled "Notice of Change of Address."  A notice of change of address must be properly served on other parties. Service of documents at the address of record for a party is fully effective.  L.R. 182(f).  A party's failure to inform the court of a change of address may result in the imposition of sanctions including dismissal of the action.

## VI.    CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1.  Petitioner's motion to proceed in forma pauperis (ECF No. 11) is denied as moot.

2.  The petition for writ of habeas corpus (ECF No. 1) is granted.

3.  Respondents are ordered to provide petitioner with a bond hearing before an immigration judge within **seven (7) days** from the date of this order where respondents bear the burden of establishing by clear and convincing evidence that petitioner poses a danger to the community or a risk of flight to justify continued detention.

---

renewal was denied on July 30, 2024, even after indicating its intent to deny TPS based on petitioner's criminal history.  (See id.)  The government may very well have authority to detain and remove petitioner, but it must do so lawfully, following the requirements of the Constitution and its own regulations.  It has failed to do so here.

4. Within **fourteen (14) days** from the date of this order, respondents must file a status report, confirming that a bond hearing was held, providing the outcome of that hearing, and providing an update as to petitioner's status.

5. Petitioner's motion for appointment of counsel (ECF No. 12) is denied as moot.

6. The Clerk of the Court is directed to enter judgment in favor of petitioner and close this case.

Dated:  February 23, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/rivas1818.157.mtd.imm

13